UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

MARISOL MALDONADO, :

Plaintiff, : **OPINION AND ORDER**

-against- :

19 Civ. 3319 (GWG)

COMMISSIONER OF SOCIAL SECURITY, :
:
Defendant.
---------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Marisol Maldonado brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons stated below, the Commissioner's motion is denied, and Maldonado's motion is granted.

[1] See Defendant's Motion for Judgment on the Pleadings, filed Dec. 3, 2019 (Docket # 17); Memorandum of Law in Support for Defendant's Motion for Judgment on the Pleadings, filed Dec. 3, 2019 (Docket # 18) ("Def. Mem."); Plaintiff's Motion for Judgment on the Pleadings, filed April 24, 2020 (Docket # 28); Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed April 24, 2020 (Docket # 29) ("Pl. Mem."); Reply Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings, filed May 15, 2020 (Docket # 30) ("Def. Reply"); Reply Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed May 26, 2020 (Docket # 33) ("Pl. Reply").

I.   BACKGROUND

   A.   Procedural History

Maldonado applied for DIB and SSI on October 27, 2015.   See SSA Administrative

Record, filed Dec. 4, 2019, at 15 (Docket # 20) ("R.").   She alleged that her disability began on

December 1, 2013, when she was 47 years old.   R. 64, 141, 143.   The Social Security

Administration ("SSA") denied the application on January 15, 2016, R. 83, and Maldonado

sought review by an Administrative Law Judge ("ALJ") on March 2, 2016, R. 92.   A hearing

was held on April 23, 2018.   R. 36-63.   In a written decision dated September 20, 2018, the

ALJ found Maldonado was not disabled.   See R. 15-32.   On February 7, 2019, the Appeals

Council denied Maldonado's request for review of the ALJ's decision.   R. 1.   This action

followed.

   B.   The Hearing Before the ALJ

The hearing was held by video conference before an ALJ in Falls Church, Virginia.

R. 15.   Maldonado, appearing pro se, was in New York, New York.   Id.   A vocational expert,

Darrington Crane, was also present.   Id.

Maldonado testified that she lived in New York "basically . . . by myself right now," and

had been for the past seven months.   R. 42.   She has never had a driver's license and gets

around by train and bus.   Id.   Maldonado has an 11th-grade education.   Id.

Maldonado has not worked since 2013 when she was self-employed as a cake baker.

R. 43.   Before that, for five years she worked as a dental assistant.   Id.   She had also worked as

a home health care aide and receptionist for short periods of time.   R. 46.

She left her job as a dental assistant "because of [her] back."   Id.   When asked what was

wrong with her back, she described it as "arthritis . . . a dislocated disc," and "a pinched nerve,

that's why sometimes I can't sit too long."   Id.   She said she had discussed surgery but wanted

to "wait a little longer" because she was scared of it.   R. 46-47.   She described her physical

condition as being "in constant pain, I can't sit too long, I can't stand up too long[.]"   R. 52.

She said she "could walk like three blocks and then I have to stop."   R. 53.   Maldonado had

tried physical therapy but "it didn't work for me," and she took several medications for her back,

including muscle relaxers and "oxy."   R. 47.   Maldonado also testified that she had surgery on

her hands and was supposed to wear a brace, that she has "severe migraines all the time," and

that she was recently diagnosed "with diabetes and some other stuff and bipolar."   Id.   She

described her hand condition as putting her "in pain so I drop, like when I'm washing

dishes . . . I've broken a lot of my dishes by mistake . . . because they drop."   R. 52-53.

Maldonado had been going twice a week to a doctor for hand therapy.   R. 48.   She brought

some medical records with her to the hearing, "from the doctor for my hands, my pain

management for my back and my psychiatrist and my regular doctor."   R. 47.   She gave the

names and addresses of these doctors to the ALJ.   R. 48-51.

In describing her mental condition, Maldonado said she was "bipolar," R. 47, that she

"got panic attacks, I get anxiety and I barely go outside," R. 52.   Her anxiety is so bad that she

would only go to the grocery store once a month, with a friend.   Id.   She liked to read "[b]ut

lately I haven't been able to, to read and stay on the book, I get anxious and I can't stay still."

R. 53.   She went to counseling every two weeks and to her psychiatrist once a month.   R. 54.

She took "three different medications," but "the bipolar one" was only "sort of working, not as

fast as I would like," and she had "insomnia so right now I haven't slept over 24 hours," adding

that she sometimes went almost "three days without sleeping."   Id.

Maldonado testified that she no longer bakes any cakes.   R. 53.   She sees her daughter

"sometimes on the weekend from school," but she has not "gone to see [her] son." Id. She has four grandchildren and "every now and then they bring them down" to see her, but she does not ever go out to see them. Id. Aside from her mental health appointments, Maldonado testified that she went "for my hand therapy twice a week and for my [pain] injections I go every two weeks." R. 54. She said that while she "used to drink occasionally . . . I don't do it anymore, it's been like two years." Id.

The ALJ consulted a vocational expert ("VE"), Darrington Crane, by phone, who identified Maldonado's past work as cake maker, dental assistant, general clerk, and hotel maid. R. 56. The ALJ asked the VE the following question:

> [L]et's assume a hypothetical individual of the claimant's age and education and with past jobs you described. Further assume this individual is limited to the light range, which is lifting 20 pounds occasionally, 10 pounds frequently, carrying and pushing, pulling the same, standing, walking, sitting for six hours. The hypothetical individual can reach frequently in all directions, frequently handle and frequently finger . . . hypothetical individual can occasionally climb ramps and stairs, no climbing ladders, ropes or scaffolds, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl. The hypothetical individual cannot work in unprotected heights, be exposed to dangerous moving mechanical parts and can only have occasional exposure to vibration. Can the hypothetical individual perform any of the past jobs you described?

R. 57. The VE responded that such a person could perform the job of general assistant. R. 58. The VE also testified that such a person could find work in the national economy as a marker, photocopy machine operator, and router. R. 58.

The ALJ then altered the hypothetical, asking, "Now if I find that the hypothetical individual [sic] to the sedentary range or to lifting 10 pounds occasionally, less than 10 frequently and sitting for six, standing or walking for two, and could the hypothetical individual

perform any of the past jobs you described?" R. 58. The VE responded that general clerk[2] would still be available, and that the individual could also work as an addresser, call out operator, and document preparer. R. 58-60. The VE further testified that those jobs would still be available, with the exception of the general clerk job, if the individual were "further limited to simple, routine, repetitive tasks, simple work-related decisions, and only occasional interaction with supervisors, coworkers and the public and only occasional changes in the work setting." R. 60. The VE also testified that those jobs, including the general clerk position, would still be available if the individual "needed to sit . . . for 45 minutes and then stand for a minute or two without going off task or leaving the workstation." R. 61. The same held true, the VE testified, if the individual "needed to be off task 5% of the time in addition to normal breaks." Id. However, all employment options would be eliminated if the person had to be "off task 30% of the time." Id. The VE testified that her testimony was consistent with the Dictionary of Occupational Titles, although "the information about interaction" came from her job analysis and placement experience. R. 61-62.

C. The Medical Evidence

Both Maldonado and the Commissioner have provided detailed summaries of the medical evidence. See Pl. Mem. at 6-18; Def. Mem. at 1-19. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed April 18, 2019, ¶ 3 (Docket # 9), and neither party has done so. Accordingly, the Court adopts the parties' summaries of the medical evidence as accurate and complete for purpose of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

[2] The VE appears to have used "general clerk" and "general assistant" interchangeably.

D. The ALJ's Decision

The ALJ denied Maldonado's application on September 20, 2018. R. 32. The ALJ first found that Maldonado met "the insured status requirements of the Social Security Act through June 30, 2018." R. 18. Then, following the five-step test set forth in SSA regulations, the ALJ found at step one that Maldonado had not engaged in "substantial gainful activity since December 1, 2013." Id. At step two, the ALJ found that Maldonado had the following severe impairments: "lumbar impairment; history of mild carpal tunnel syndrome status-post carpal tunnel release surgeries; right hand unilateral primary osteoarthritis of the first carpometacarpal joint; anxiety disorders; affective disorders." Id.

At step three, the ALJ concluded that none of Maldonado's severe impairments singly or in combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19. The ALJ specifically considered sections in listing 1.04 (spine disorders), 1.02 and 11.14 (motor function disorders), and 12.04 and 12.06 (mental impairments). Id. Specifically, the ALJ considered whether the "paragraph B" criteria were met for section 12.04 and 12.06. Id. These require that "the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." Id. The ALJ found Maldonado to have a mild limitation "[i]n understanding, remembering, or applying information"; a moderate limitation "[i]n interacting with others"; and a moderate limitation in "concentrating, persisting, or maintaining pace." R. 19-20. She found Maldonado had a moderate limitation in "adapting or managing oneself." R. 20. The ALJ also found that Maldonado does not meet the "paragraph C" criteria, because:

> The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. The claimant has intact daily activities and has demonstrated an ongoing ability to function outside of a supportive living environment and outside the area of her home.

R. 21.

The ALJ then assessed Maldonado's residual functional capacity ("RFC"). Id. The ALJ determined that Maldonado retained the ability to perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b), and SSR 83-10, with the following limitations:

> However, she can frequently reach, handle, and finger, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds and must avoid all exposure to unprotected heights and dangerous moving mechanical parts. She can tolerate occasional exposure to vibrations. The claimant can perform simple, routine, repetitive tasks involving simple work-related decisions, occasional workplace changes, and occasional interaction with supervisors, coworkers, and the public. She also requires the freedom to be off-task up to five percent of an eight-hour workday in addition to normal breaks.

Id.

The ALJ considered Maldonado's description of her impairments but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" and described the testimonial and objective medical evidence that caused her to reach this conclusion. R. 22-24. She also evaluated the opinion evidence in the record. R. 24-30. This examination included an evaluation of the opinions of Drs. Cortes, Kohler, Zilberman, Salon, and Frankel, in addition to the opinion of Physician's Assistant Avezbakiyev. Id.

At step four, the ALJ concluded that Maldonado was "unable to perform any past relevant work." R. 30. The ALJ relied on the VE's testimony that "above residual functional capacity limiting the claimant to unskilled work would preclude her from performing the mental

requirements of her past light and sedentary work."   R. 31.   She also compared "the mental demands of the claimant[']s past work to her residual functional capacity," and found "that she is unable to perform any past relevant work."   Id.

At step five, the ALJ considered Maldonado's "residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines."   Id.   Crediting the VE's testimony, the ALJ found that Maldonado could perform the jobs of "Marker," "Photocopying Machine Operator," and "Router."   R. 31-32.   The ALJ further found that these jobs existed in the national economy in significant numbers.   R. 32.   Accordingly, the ALJ determined that Maldonado was not disabled under the Act.   Id.

     E.   The Appeals Council Decision

When Maldonado appealed her decision to the Appeals Council, she included two additional submissions of medical evidence: a document from Bellevue Hospital Center indicating that she had been admitted on October 29, 2018, and discharged on November 6, 2018, and a document from The Institute for Family Health dated November 19, 2018.   R. 6-11. The Bellevue document, labeled "Adult Discharge and After-care Plan" reflected that Maldonado had been admitted to Bellevue on October 29, 2018 for a psychiatric hospitalization caused by "injury to self."   R. 9.   It listed her "principle diagnosis at discharge" as "Bipolar disorder type II mixed, obsessive compulsive disorder, panic disorder with agoraphobia, type II diabetes mellitus."   Id.   The Institute document shows that Maldonado visited PA Avezbakiyev for a "treatment plan review" on November 11, 2018.   R. 7.   It noted that Maldonado attempted suicide "by drug ingestion" on October 30, 2018.   Id.   The Appeals Council decision noted the presence of this evidence, but dismissed it summarily, writing simply that "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the

decision." R. 2.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted). The "threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original, punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (punctuation omitted).

      B.  Standard Governing Evaluation of Disability Claims by the Agency

      The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

      To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam);

Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled.

Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

C. The Duty to Develop the Record

When an ALJ assesses a claimant's alleged disability, an ALJ must develop the claimant's medical history for at least a 12-month period. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1512(d), 416.912(d) (2017);[3] see Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings . . . .") (citing cases); accord Sims v. Apfel, 530 U.S. 103, 111 (2000) (ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits"). The governing statute provides that the ALJ "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make" the disability determination. 42 U.S.C. § 423(d)(5)(B); accord 20 C.F.R. §§ 404.1512(d), 416.912(d). The regulations define this as, at a minimum, "the records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in which" a claim is filed. 20 C.F.R. §§ 404.1512(d)(2), 416.912(d)(2). "Every reasonable effort" means that the Social Security Administration must:

> make an initial request for evidence from [a claimant's] medical source and, at any time between 10 and 20 calendar days after the initial request . . . make one follow-up request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days

[3] These regulations were amended by the SSA, effective March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01 (Jan. 18, 2017), 2017 WL 168819. Because Maldonado's claim was filed before March 27, 2017, the old version of the regulations applies. See id.

> from the date of [the SSA's] follow-up request to reply, unless [the SSA's] experience with that source indicates that a longer period is advisable in a particular case.

Id. §§ 404.1512(d)(1), 416.912(d)(1); accord Assenheimer v. Comm'r of Soc. Sec., 2015 WL 5707164, at *15 (S.D.N.Y. Sept. 29, 2015). The ALJ's duty to develop the record remains regardless of whether the claimant is represented by counsel. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999); accord Cancel v. Colvin, 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) (citing cases).

Furthermore, this duty "encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." Pena v. Astrue, 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008). Where the ALJ fails to develop the record, remand is appropriate. Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999).

At the same time, it is well established that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa, 168 F.3d at 79 n.5 (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)); accord Perez, 77 F.3d at 48 (where the ALJ had "already . . . obtained and considered reports" from treating physicians, the ALJ "had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability").

Yet, "[e]qually well established is the principle that when a disability claimant is unrepresented, an ALJ's duty to develop the record is 'heightened.'" Corporan v. Comm'r of

Soc. Sec., 2015 WL 321832, at *3 (S.D.N.Y. Jan. 23, 2015) (citing Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990)). When a claimant appears pro se, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cruz, 912 F.2d at 11 (punctuation omitted). Furthermore, "it is self-evident that courts should exercise an extra measure of caution when adjudicating the claims of a litigant whose mental capacity is in question." Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 514 (2d Cir. 2002). Accordingly, the duty to develop the record is "doubly heightened" where a claimant is both unrepresented and alleges mental impairments, as occurred here. Rosa v. Comm'r of Soc. Sec., 2018 WL 5621778, at *10 (S.D.N.Y. Aug. 13, 2018), adopted 2018 WL 4771531, at *1 (S.D.N.Y. Oct. 3, 2018). This Court, too, must undertake a "searching investigation of the record" to make good the claimant's right to "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) (punctuation omitted).

## III. DISCUSSION

Maldonado raises two grounds for reversing the ALJ's decision: (1) the ALJ failed to develop an adequate record for decision-making, Pl. Mem. at 18-25; and (2) the ALJ's RFC determination was not supported by substantial evidence, id. at 25-30. Because we conclude a remand is required to develop the record, we do not reach the second issue.

Maldonado argues that the ALJ failed to develop an adequate record in a number of ways. First, she argues that the ALJ's questioning of Maldonado was inadequate, because the ALJ failed to ask questions from Maldonado that would allow her to evaluate Maldonado's subjective complaints of pain and disability. Pl. Mem. at 20-21. Maldonado also argues that the ALJ inappropriately "seized upon ambiguities or inconsistencies in the record, interpreting

them to Ms. Maldonado's disadvantage, without taking minimal steps to resolve them," focusing, inter alia, on the ALJ's repeated mention of Maldonado's "needing to travel" and the identical handwriting of Dr. Kohler and Dr. Cortes' assessments. Id. at 22-23. Finally, Maldonado argues that the Appeals Council failed to develop the record by not requesting the "actual records of Ms. Maldonado's hospitalization" after receiving her evidentiary submission indicating such hospitalization. Id. at 25.

As noted, in this case, the ALJ had a "doubly heightened" duty to develop the record, both because Maldonado was pro se and because she alleged numerous mental impairments. Rosa, 2018 WL 5621778, at *10. That duty included "the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." Cruz v. Astrue, 941 F. Supp. 2d 483, 495 (S.D.N.Y. 2013). This accords with the ALJ's duty to ensure that the claimant receives a "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." Gold v. Sec'y of Health, Ed. & Welfare, 463 F.2d 38, 43 (2d Cir. 1972).

Here, we cannot find that the ALJ's questioning of Maldonado, who was appearing pro se, about her mental impairments met this exacting standard. The ALJ asked essentially no specific questions about the numerous mental conditions that Maldonado alleged she had or that were reflected in records already before the ALJ. For example, Maldonado repeatedly mentioned her bipolar diagnosis in the hearing. See R. 47 ("I just was diagnosed with diabetes and some other stuff and bipolar."); R. 54 ("I caught a rash so the bipolar one it's sort of working, not as fast as I would like."). She also mentioned that she "got panic attacks," along with having "anxiety and I barely go outside." R. 52. She mentioned that these symptoms had

been getting worse, that "lately I haven't been able to, to read and stay on the book, I get anxious

and I can't stay still."   R. 53.   But the ALJ asked no specific questions about the location,

duration or frequency of these symptoms.   See R. 52.   In response to Maldonado's mention of

going to counseling and a psychiatrist regularly, the ALJ merely asked "are things getting

better?" without any specification of what "things" were being referred to or any follow-up

questioning.   R. 54.   When, in response, Maldonado described how she was on multiple

medications and suffered from insomnia, the ALJ did not engage in any follow-up.   Id.   The

ALJ asked no questions about the intensity of Maldonado's mental impairments, about whether

they had gotten worse over time, or about the effectiveness of Maldonado's medications in

keeping her symptoms under control.   She asked no questions about the "three different

medications" that Maldonado said she was on.   R. 54.

         While it might not have been an independent ground for remand, we find that the

questioning regarding physical symptoms was not as detailed as it could have been — for

example, by not more exhaustively probing Maldonado's daily activities and the specific effects

of her claim of back pain.   See Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) ("Despite

passing references by plaintiff to 'heart pains' and 'shortness of breath,' the ALJ never

questioned plaintiff about his subjective symptoms.").

         The dearth of questioning on Maldonado's mental limitations and the fact that

Maldonado was pro se persuades us that we are compelled to remand to require further

questioning.   See, e.g., L'Ouverture v. Comm'r of Soc. Sec., 2017 WL 4157369, at *19

(S.D.N.Y. Sept. 18, 2017) (remanding for failure to develop the record where "at the hearing,

plaintiff testified that his mental state had worsened" and "[t]he ALJ did not follow up with

plaintiff concerning his testimony"); Encarnacion ex rel. George v. Barnhart, 2003 WL 1344903, at *2 (S.D.N.Y. Mar. 19, 2003) (remanding for failure to develop the record where "the ALJ did not elicit any testimony from Plaintiff about the nature of [her child's] psychiatric treatment, nor did he ask about her ADHD or hyperactive behavior," despite Plaintiff repeatedly mentioning these ailments).   As the Second Circuit has repeatedly recognized, while "[t]he Secretary is not obligated to furnish a claimant with counsel," the ALJ still "has a special duty to protect the rights of a pro se claimant. . . . When the ALJ fails to develop the record fully, he does not fulfill this duty and the claimant is deprived of a fair hearing."   Lopez v. Sec'y of Dep't of Health & Human Servs., 728 F.2d 148, 149-50 (2d Cir. 1984).

The Commissioner's reliance on the ALJ's efforts to obtain Maldonado's medical records does not suffice to show that the ALJ fully developed the record or provided Maldonado with a full and fair hearing.   Def. Reply at 6-7.   The duty to develop the record goes beyond getting medical records, it also includes "the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity."   Pena, 2008 WL 5111317, at *8.   The Commissioner must consider a claimant's "subjective evidence" of disability as "testified to by the claimant" in evaluating the claim. Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983).   The ALJ's omission of questions specifically directed towards Maldonado's alleged mental impairments failed to satisfy this requirement.

Because the case must be remanded for the additional questioning, we also direct that inquiry be made into the hospital record that was supplied to the Appeals Council inasmuch as, while the hospitalization took place after the ALJ hearing, it was only a few weeks later and may

bear upon Maldonado's condition during the relevant period. The ALJ is also directed to follow-up on Maldonado's claims about physical limitations.

While we do not find that any of the other alleged breaches of the duty to develop the record alleged by plaintiff would require a remand on their own, the ALJ is encouraged to develop the record in any other way the ALJ sees fit.

Finally, we note that the ALJ states that the record "does not indicate that she has attempted any other treatment aside from pain management," R. 25, and states that Maldonado "testified that she participated in physical therapy in the past, which she claimed exacerbated her symptoms, and while I accept her testimony, there are no physical therapy treatment notes in the record or evidence that she has pursued less aggressive treatment such as aquatherapy," R. 22. This appears to be an error inasmuch as the record contains a number of references to physical therapy, including indications that Maldonado had undergone such therapy for many months. See R. 197 ("Marisol Maldonado is currently a patient here at Hudson Spine and Pain Medicine . . . She has been suffering from lower back pain and is to follow up with us on a bi-weekly basis to continuing [sic] with physical therapy and treatment."); R. 199 ("Treatment has included physical therapy, massage."); R. 200 ("Patient has failed conservative therapy including physical therapy and NSAIDs."); R. 203 ("Pt made visit to pain management and was referred to PT by MD."); R. 204 ("Physical Therapy: Therapeutic Activities: Log Rolling, Sit<->stand, Postural Education, Review of HEP; Resistive exercise: Hip :Clams 3x10, Supine Bridges 3x10"); R. 207 ("Patient has tried conservative therapies in the past including 3 months of PT and NSAIDS which has not provided optimal pain relief."); R. 373 ("Patient has tried and failed conservative therapy including pain and NSAID medications, rest, massage, stretching, and

physical therapy for over 6 months without significant pain relief."); R. 385 ("Patient has been treated by a physical therapist, exercises, and recieved [sic] oral medications for pain for at least six weeks with only temporary and limited relief."). The ALJ should reconsider the quoted statements in light of this evidence.

In sum, the ALJ should develop the record further in the manner indicated. The ALJ is free to develop the record in any other manner that the ALJ may deem helpful in addressing the issue of Maldonado's impairments.

## IV. CONCLUSION

For the foregoing reasons, Maldonado's motion for judgment on the pleadings (Docket # 28) is granted, and the Commissioner's motion for judgment on the pleadings (Docket # 17) is denied. The matter is remanded for further proceedings consistent with this opinion and order.

SO ORDERED.

Dated: March 9, 2021
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge